NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

APR 7 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| NATIVE ECOSYSTEMS COUNCIL, | No. 18-36067 |
| Plaintiff-Appellant, | D.C. No. 9:17-cv-00153-DWM |
| and | |
| ALLIANCE FOR THE WILD ROCKIES, | MEMORANDUM* |
| Plaintiff, | |
| v. | |
| LEANNE MARTEN, Regional Forester of Region One of the U.S. Forest Service; et al., | |
| Defendants-Appellees, | |
| MONTANA WOOD PRODUCTS ASSOCIATION, a Montana Corporation; et al., | |
| Intervenor-Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted November 8, 2019

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Portland, Oregon

Before: GILMAN,** PAEZ, and RAWLINSON, Circuit Judges.

Native Ecosystems Council (NEC) appeals the district court's grant of summary judgment in favor of the U.S. Forest Service. The court held that the Service's designation of certain Montana forest lands as "landscape-scale areas" under the Healthy Forests Restoration Act (HFRA), 16 U.S.C. § 6501 *et seq.*, and the Service's approval of the Moose Creek Vegetation Project did not violate either HFRA or the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 *et seq.*

Because HFRA and NEPA do not provide private causes of action to enforce their provisions, the arbitrary-or-capricious standard set out in the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, governs challenges to agency decisions alleged to violate those statutes. *See* 5 U.S.C. § 706(2)(A); *Native Ecosystems Council v. U.S. Forest Serv.*, 428 F.3d 1233, 1238 (9th Cir. 2005).

**1.** NEC has standing to pursue this appeal. Its claim to standing is based on the declarations of Sara Johnson, its executive director. Johnson declared that she has visited the area around the Project site seven times, including five times since 2008, and has concrete plans to visit the site in the future.

"Repeated recreational use itself, accompanied by a credible allegation of

---

** The Honorable Ronald Lee Gilman, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

desired future use, can be sufficient, even if relatively infrequent, to demonstrate that environmental degradation of the area is injurious to that person." *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1149 (9th Cir. 2000). Johnson averred that she "use[s] the affected area" and is a person "for whom the aesthetic and recreational values of the area will be lessened by the challenged activity." *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000) (citation and internal quotation marks omitted). That is sufficient to qualify as an injury in fact. Accordingly, Johnson would have standing to sue in her own right, and thus NEC has standing by extension. *See id.* at 181.

**2.** NEC's contention that the Forest Service violated the law by designating areas under HFRA without engaging in a NEPA analysis is foreclosed by our recent decision in *Center for Biological Diversity v. Ilano*, 928 F.3d 774 (9th Cir. 2019). The *Ilano* court held that landscape-area designations under HFRA do not trigger a requirement for NEPA analysis. *Id.* at 780–81. Because *Ilano* controls the outcome on this issue, NEC's challenge must be rejected.

**3.** The approval of the Moose Creek Vegetation Project did not contravene HFRA's mandate regarding the retention of old-growth and large trees, *see* 16 U.S.C. § 6591b(b)(1)(A), for several reasons. First, the Forest Service's decision to focus primarily on preserving larger old-growth patches in order to satisfy HFRA was not arbitrary or capricious. Its determination that "in very small patch

3                                                                18-36067

sizes, old growth cannot provide the environment needed for many species to function" is the classic sort of scientific judgment that is within the Forest Service's expertise and is entitled to substantial deference. *See N. Plains Res. Council, Inc. v. Surface Transp. Bd.*, 668 F.3d 1067, 1075 (9th Cir. 2011).

Second, HFRA's statutory text states that a treatment project must "maximize[ ] the retention of old-growth and large trees, *as appropriate for the forest type, to the extent that the trees promote stands that are resilient to insects and disease . . .*" 16 U.S.C. § 6591b(b)(1)(A) (emphasis added). HFRA's command to maximize old-growth retention is specifically conditioned on that resilience. The Forest Service made an expert judgment that stands of trees below a certain size are not as effective in accomplishing this goal—a judgment that, again, is entitled to substantial deference.

Finally, NEC focuses on one unit within the Project, called Unit 7, and on a field survey of that area conducted in 2016. It asks us to conclude that this survey, rather than the Forest Service's "Old Growth Report," represents the best scientific information. NEC argues that the Forest Service erred by not taking the survey into account. This argument, however, fails to acknowledge that the survey does not draw any conclusions about the presence of old growth in Unit 7. By contrast, the Old Growth Report covered the entire Project area and was conducted for the specific purpose of assessing old-growth conditions.

**4.** The Forest Service's determination that no extraordinary circumstances existed that would require further procedures under NEPA before approving the Moose Creek Vegetation Project was not arbitrary or capricious. NEC's argument to the contrary is premised largely on its assertion that the Forest Service failed to consider the *cumulative* impacts of the Project. It contends, specifically, that the forest clearing to be conducted through the Project, combined with past logging, would have a significant cumulative impact on species that thrive on "snag habitat."

This assertion, however, is belied by the record. The Forest Service conducted a "Snag Habitat Report" to estimate the Project's effect on snags (which are standing dead trees). That Report concluded that for all forest types except one, the number of snags per 100 acres would exceed the standards set by the governing Forest Plan. The sole exception was for a type of tree where the sample size was very small and of which no harvesting is scheduled under the Project.

NEC does not address this point at all. Nor does it offer any other good reason to conclude that the Forest Service's determination that no extraordinary circumstances existed was arbitrary or capricious. It simply asserts, without any details, that the Moose Creek Vegetation Project will have unspecified cumulative impacts. We reject this argument.

For all of the above reasons, we **AFFIRM**.

18-36067

***Native Ecosystems Council v. Marten*, Case No. 18-36067
Rawlinson, Circuit Judge, concurring in the judgment:**

I concur in the judgment affirming the decision of the district court. I agree that Appellant Native Ecosystems Council has standing to pursue this appeal. I also agree that Appellant's challenge to the designation of areas to be included in a treatment project pursuant to the Healthy Forests Restoration Act without an analysis under the National Environmental Policy Act (NEPA) is foreclosed by our recent decision in *Center for Biological Diversity v. Ilano*, 928 F.3d 774, 780 (9th Cir. 2019). In addition, I concur in the disposition's conclusion that the United States Forest Service did not act arbitrarily and capriciously in identifying tree "stands that are resilient to insects and disease" pursuant to old-growth survey data. 16 U.S.C. § 65916b(b)(1)(A). Finally, the determination that no extraordinary circumstances existed to otherwise trigger a NEPA analysis was not arbitrary or capricious. *See* 40 C.F.R. § 1508.4 (equating extraordinary circumstances with "a significant environmental effect"). In my view, no additional analysis is required to resolve this case.

1